IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 14 CR 402-1 |
| ) | Judge Virginia M. Kendall |
| FREDDIE HARVEY, et al. ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO CONTINUE SENTENCING AND TO COMPEL DISCLOSURE OF BRADY AND GIGLIO MATERIALS RELEVANT TO SENTENCING**

Defendant, **FREDDIE HARVEY,** by and through his attorneys, **THOMAS ANTHONY DURKIN** and **CHRISTOPHER T. GROHMAN**, pursuant to the Due Process and Effective Assistance of Counsel provisions of the Fifth and Sixth Amendments to the Constitution of the United States, as well as Rule 12 of the Federal Rules of Criminal Procedure, respectfully moves this Court: (1) continue the sentencing date currently set for February 4, 2016, and the accompanying briefing schedule; and (2) to compel the government to produce (a) an unredacted copy of defendant Hoskins plea agreement; (b) the identities, criminal histories, and any reports of interview related to the three unidentified "confidential informants" discussed in paragraph 21 of the PSR; (c) the criminal histories and any other *Giglio* material related to Marlone Hirsch and Anthony Lewis; and (d) Agent Sabaini's reports of interview of Hirsch and Lewis.

In support of this motion, Defendant, through counsel, shows to the Court the following:

**I.      FACTUAL BACKGROUND**

1.      On July 17, 2014, a Complaint was filed alleging that Defendant violated 18 U.S.C. § 841(a)(1). (Dkt. # 1).

2. On July 22, 2014, Defendant was arrested pursuant to an arrest warrant issued on July 17, 2014. On the same day Defendant was arrested, the Government orally moved for pretrial detention. (Dkt. # 5).

3. Following a detention hearing on August 8, 2014, the Government's oral motion for pretrial detention was denied and the Court released Defendant on a $100,000.00 bond secured by real property. (Dkt # 12, 13). As a condition of Defendant's release, Defendant was placed on home incarceration with electronic monitoring.

4. On August 20, 2014, a grand jury returned an Indictment charging Defendant in Counts One, Two and Three with violations of 21 U.S.C. § 841(a)(1). (Dkt. # 22). Count One charged Defendant with knowingly and intentionally possessing with intent to distribute five kilograms or more of cocaine. Count Two charged Defendant with knowingly and intentionally distributing 500 grams or more of cocaine. Count Three charged Defendant with knowingly and intentionally possessing with the intent to distribute 28 grams or more of cocaine base.

5. On October 30, 2015, Defendant entered a plea of guilty to Count One of the indictment.

6. In both a draft plea agreement and in the government's version, the government calculated the advisory sentencing guidelines range at 120 to 135 months' imprisonment.

7. On or about December 29, 2015, the probation department issued the PSR. The PSR determined that Defendant is career offender largely based on a parole violation relating to a 1995 conviction that defendant committed when he was 16 years old. The PSR also recommends withholding acceptance of responsibility – *see* paragraph 41 – resulting in a guidelines range of 360 months to life imprisonment.

8. The PSR states that it relies on co-defendant Hoskins's plea agreement. PSR at ¶ 21.

9. Despite Defendant's guilty plea and general cooperation, the PSR recommends withholding acceptance of responsibility from Defendant because Agent Sabaini told the probation officer that "three different cooperating sources, whom he considered reliable, as well as Defendant Hoskins, all independently reported Defendant Harvey has continued to distribute firearms and narcotics since his placement of bond." PSR at ¶ 21 and ¶ 41.

10. To date, the defense has not received any reports of interview from either co-Defendant Hoskins or these three unidentified informants relating to allegations that defendant is dealing drugs on bond. It should be noted that defendant is on electronic monitoring and living with his parents, so these allegations seem unlikely. Further, as another condition of his bond, defendant is not allowed to have contact, and has had no contact, with co-defendant Hoskins.

11. Because the PSR enhances defendant's offense level based on the statements of Hoskins and these three confidential sources, the defense is entitled to any and all interview reports in which these individuals discuss the defendant. Furthermore, because the PSR is relying on these "reliable" sources, the defense is entitled to any and all *Giglio* material related to these individuals, including their identities, any benefits they received from the government for their cooperation, prior inconsistent statements, and copies of their criminal histories. To date, none of these materials have been received. To the extent that no reports of interview exist, these allegations must be struck from the record. Furthermore, the benefits Hoskins received from the government as part of his plea agreement are *Giglio* material. As such, the defense is entitled to an unredacted copy of his plea agreement.

12. In paragraph 71 of the PSR, the PSR recounts various statements from Marlone Hirsch and Anthony Lewis regarding an alleged shooting that occurred in 2008 involving the defendant. This paragraph also states, "The case agent who investigated the instant offense, namely Special Agent Anthony Sabaini, reported that he reviewed the case file on this arrest and interviewed the victims of this offense." The government's version also goes into great detail about this alleged shooting.

13. Putting aside the propriety of relying heavily on the conduct that was part of an arrest but not a conviction, it should be noted that both Mr. Hirsch and Mr. Lewis testified at defendant's trial for attempted murder, and the judge, after a bench trial, acquitted the defendant on all charges. Again, because the government and the PSR are relying on statements from Hirsch and Lewis, the defendant is entitled to copies of their criminal histories. Furthermore, the defendant is entitled to copies of any reports Agent Sabaini wrote after he interviewed Hirsch and Lewis. If no such reports exist, Agent Sabaini's hearsay statements to the probation officer regarding what Hirsch and Lewis told him should be stricken from the PSR and record.

14. Defendant needs additional time to prepare for sentencing hearing. More specifically, he needs time to review the underlying dates of conviction and parole violation for the 1995 conviction that purportedly makes defendant a career criminal, effectively tripling his guidelines range. He also needs time to obtain the record from the 2008 case involving Hirsch and Harris. He also needs additional time to review the above requested discovery materials after they are turned over by the government.

15. It should be noted that defendant continues to attend college classes and counseling as directed by the pretrial services office and to date has had no violations of his bond.

16.     Undersigned counsel spoke with AUSA Paul Tzur and Mr. Tzur has no objection to continuing the sentencing date.

Respectfully Submitted,

/s/ Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**

/s/ Christopher T. Grohman
**CHRISTOPHER T. GROHMAN,**
Attorneys for Defendant.

**DURKIN ROBERTS & GROHMAN**
2446 N. Clark St.
Chicago, IL 60614
(312) 913-9300
tdurkin@durkinroberts.com
cgrohman@durkinroberts.com

## **CERTIFICATE OF SERVICE**

      Christopher Grohman, Attorney at Law, hereby certifies that the foregoing Motion was served on January 14 2016, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

      /s/ Christopher Grohman
**THOMAS ANTHONY DURKIN**
2446 N. Clark St.
Chicago, IL 60614
(312) 981-0137
cgrohman@durkinroberts.com